## CONGRESS FINANCIAL CORPORATION, Plaintiff,

v.

## JOHN MORRELL & CO., Defendant.

### No. 90 Civ. 7191 (RPP).

United States District Court, S.D. New York.

April 12, 1991.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City by Bernard Beitel, for plaintiff.

Townley & Updike, New York City by Jerome P. Coleman, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant John Morrell & Co. ("Morrell") moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Southern District of Ohio. The motion is denied.

This action was commenced by plaintiff Congress Financial Corporation ("Congress") in New York State Court by service of a summons and verified complaint on defendant on October 18, 1990. Defendant, who is qualified to do business in New York and has an office in Schenectady, served its verified answer and a notice of removal to the United States District Court for the Southern District of New York on November 8, 1990. This motion was made January 31, 1991.

The complaint herein is based on a letter from Congress to Morrell dated October 2, 1990 (the "Letter Agreement"), and accepted by Morrell and Dinner Bell Foods, Inc.

---

("Dinner Bell"), a company whose assets Morrell acquired by purchase agreement of the same date ("Purchase Agreement"), and whose trademarks and other intellectual property, and whose "accounts" and "inventories" and their "products" and "proceeds" as those terms are defined in the Uniform Commercial Code had been previously assigned to Congress as collateral for financing. The Letter Agreement in essence was an agreement by Morrell to purchase the products and inventory of Dinner Bell, subject to Congress' lien, and pay the proceeds to Congress, thereby paying off Dinner Bell's financing from Congress in return for a release by Congress of all security interests it held in the intellectual property, trademarks and other assets of Dinner Bell. Affidavit of Thomas Davis, January 28, 1991, Exhibit B.

Congress' claim against Morrell is for breach of contract because Morrell failed to pay Congress for 35 invoices for products shipped by Dinner Bell totalling $2,295,-865.11, pursuant to short-term co-pack contracts referred to in the Letter Agreement and failed to pay Congress for the remaining inventory of Dinner Bell, valued at $400,000. Morrell pled, as an affirmative defense, fraud in the inducement based on Morrell's alleged knowledge that Dinner Bell's inventory was misstated at the time of Morrell's purchase of Dinner Bell assets.

On this motion, Morrell claims that the balance of interest favors a transfer to the Southern District of Ohio due to the necessity of calling as witnesses the Dinner Bell employees knowledgeable about the status of its inventory and the knowledge of Congress of its misstated size. It also points out (1) that the Purchase Agreement was entered into in Ohio and requires the application of Ohio law and that both Morrell and Dinner Bell signed the Letter Agreement in Ohio.

The acquisition of Dinner Bell arises out of circumstances typical of the decade of 1980–1990. Dinner Bell was purchased in a leveraged buy-out in June 1988 by a New York based group comprised of BJF Holding Corp. ("BJF"), owned by Joshua Leibowitz and Citicorp Venture Capital Ltd. ("Venture"). In connection with this leveraged buy-out, Congress entered into financing agreements which were to be governed by New York law, pursuant to which all Dinner Bell's present and after acquired "Accounts," "Inventory" and the "Products" and "Proceeds thereof" were assigned as collateral.[1] In 1990, Dinner Bell's New York investors entered into extensive negotiations with Morrell and, ultimately, the Purchase Agreement whereby Dinner Bell agreed to sell its North Carolina plant, the Dinner Bell name and customer list, trademarks, copyrights, patents, trade secrets, planned projects and goodwill to Morrell. Morrell and Dinner Bell also entered into co-pack agreements to purchase products and inventory of Dinner Bell. The Letter Agreement was entered into simultaneously. Under the Letter Agreement, Congress released its existing lien on the trademarks and products and inventory in return for Morrell's agreement to pay for products delivered by Dinner Bell under the short-term co-pack agreement.

■ In a motion pursuant to 28 U.S.C. § 1404(a), the Court must weigh the convenience of the parties, convenience of witnesses, ease of access to sources of proof, availability of process to compel attendance of witnesses, costs of obtaining willing witnesses and practical problems relating to the prompt trial and the interests of justice. *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 935 (S.D.N.Y.1989); *Schneider v. Sears*, 265 F.Supp. 257 (S.D. N.Y.1967) (Weinfeld, J).

■ In this case, Dinner Bell's representatives in the negotiation of the Purchase Agreement and Letter Agreement, Stanley Frieze, Joshua Leibowitz of BJF and Richard E. Mayberry, Jr., a vice president of Venture, as well as Edwin Stern, the senior vice president of Congress who negotiated the Letter Agreement, are locat-

---

**1.** Other financing for the buy-out was arranged through Glenfed Financial Corporation of Princeton, New Jersey.

**18**

ed in New York. Morrell's representatives to the negotiations are located in Ohio, and Dinner Bell's former Ohio plant employees, who are knowledgeable as to its inventory, are located in Ohio or that area of the country. On the other hand, the accountant for Congress who along with Morrell representatives, oversaw the inventory taken by Dinner Bell's accountant, is located in Philadelphia and John Baccash, an accountant with Coopers & Lybrand who closed out Dinner Bell's books and did a year-end audit, lives in New York.

Morrell's records are in Ohio. Congress' are in New York. Certain contracts relative to the events in question call for Ohio law to apply and others call for New York law to apply.

Although the balance of interests is close, the Court finds the balance weighs in favor of keeping the action in New York. Furthermore, plaintiff's choice of forum should be given weight. *A. Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439, 444 (2d Cir.1966); *U.S. Barite Corp. v. M.V. Haris,* 534 F.Supp. 328 (S.D.N.Y. 1982); *First National City Bank v. Nanz, Inc.,* 437 F.Supp. 184, 188 (S.D.N.Y.1975). Accordingly, the motion to transfer is denied.

IT IS SO ORDERED.