**MILGRIM THOMAJAN & LEE P.C., Plaintiff,**

v.

**NYCAL CORPORATION,** Arimathaea Holdings Ltd., Shephard Insurance Group Ltd. and Graham Lacey, Defendants.

No. 91 Civ. 2939 (RPP).

United States District Court, S.D. New York.

Sept. 26, 1991.

---

Milgrim Thomajan & Lee P.C. by Robert M. Meister, New York City, pro se.

Shatzkin & Reiss, New York City by Howard R. Reiss, Dilworth, Paxson, Kalish & Kauffman, Washington, D.C. by Stephen J. Mathes, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for damages alleging breach of contract and fraud. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Defendants Nycal Corporation ("Nycal"), Arimathaea Holdings Ltd. ("Arimathaea"), Shephard Insurance Group Ltd. ("Shephard") and Graham Lacey ("Lacey") move: (1) pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction; (2) pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiff's fraud claim for failure to state a claim upon which relief may be granted; (3) pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the complaint against Shephard for lack of subject matter jurisdiction; and (4) pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District for the District of Columbia. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Milgrim Thomajan & Lee ("Milgrim") is a Professional Corporation whose members are engaged in the practice of law and whose principal place of business is New York City. Defendant Nycal is a Delaware corporation whose principal place of business is Washington, D.C. Defendant Arimathaea is a Bermuda Corporation. Defendant Shephard is a Canadian

Corporation whose principal place of business is British Columbia, Canada. Defendant Lacey is an alien presently residing in Washington, D.C. He is the Chairman, Chief Executive Officer, and President of all three defendant corporations.

Milgrim's complaint alleges that during 1989 and 1990, it was retained by Lacey to perform various legal services for each of the defendant corporations. The several agreements for Milgrim to render and for the defendants to pay for legal services were reached at meetings between Lacey and Milgrim partner Raymond Mantle in New York City. Milgrim further charges that at these meetings Lacey fraudulently represented his intention to cause the defendants to pay for Milgrim's services.

Milgrim asserts that pursuant to these agreements, it rendered legal services to the various defendants during 1989 and 1990. In addition, Milgrim claims that at defendant Shephard's request it retained the Chicago law firm of McBride Bakes and Coles ("the McBride firm") to serve as Shephard's local counsel in an Illinois transaction.

Milgrim has filed suit against the various defendants. Milgrim charges that portions of its legal fees have gone unpaid. Milgrim also alleges that the McBride firm has sued Milgrim to recover $36,084.36 in unpaid fees and disbursements for services rendered on behalf of Shephard. Therefore, Milgrim also seeks from Shephard the costs of defending the McBride suit and any damages to be incurred therein. An additional claim charges Lacey with causing the services for the corporations to be performed by means of fraud and seeks the entire indebtedness from him personally.

## DISCUSSION

### I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ The defendants move pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. The plaintiff has the ultimate burden of establishing jurisdiction over the defendant by a preponderance of the evidence. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). At this stage of the litigation, however, Milgrim need only make out a *prima facie* case for jurisdiction through its pleadings and affidavits. *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Pleadings and affidavits are to be construed in the light most favorable to the plaintiff, and all doubts must be resolved in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

■ Personal jurisdiction over a defendant in a diversity action is determined by the law of the state in which the court sits. *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990), citing *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963). Therefore, New York law governs this issue.

Milgrim argues that this Court has personal jurisdiction over the corporate defendants pursuant to N.Y.Civ.Prac.L. & R. § 302(a), New York's long-arm statute.[1] Specifically, plaintiff points to § 302(a)(1). To establish jurisdiction under this subsection, a two-part test must be satisfied: first, the defendant must "transact business" within New York; second, the claim must arise from that business activity. *Cutco,* 806 F.2d at 365. A non-domiciliary is said to transact business within the meaning of § 302(a)(1) when he "purposely avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Id.*

As both plaintiff and defendants point out, "[I]f negotiations take place in New

---

1. § 302(a) provides, in pertinent part, that:

[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act ... N.Y.Civ. Prac.L. & R. (McKinney 1991).

York that 'substantially advance' or are 'essential' to one's formation of a business agreement, such activity will constitute a legally sufficient basis for jurisdiction under § 302(a)(1)." *Current Textiles Corp. v. AVA Industries, Inc.*, 624 F.Supp. 819, 820 (S.D.N.Y.1985), *citing Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir.1975).

Milgrim and the defendants set forth vastly different versions of the events leading to the formation of their contractual relationships. Construing the pleadings and affidavits in favor of Milgrim, this Court finds each of the corporate defendants did transact sufficient business with plaintiff in New York to support the Court's exercise of personal jurisdiction over them at this stage of the litigation.

### 1. Shephard

■ Milgrim alleges that its relationship with Shephard began at a meeting between Lacey and Milgrim partner Mantle which took place in New York City on February 13, 1989. Milgrim asserts that it was at this New York meeting that it agreed to provide and Lacey agreed to cause Shephard to pay for Milgrim's services.[2] Affidavit of Raymond A. Mantle, sworn to on June 28, 1991 ("Mantle Aff."), at ¶ 5. That same day, Milgrim sent a letter confirming its representation of Shephard to Shephard's Canadian counsel. Mantle Aff. Exh. 1. Because Milgrim alleges that negotiations which took place in New York substantially advanced and were essential to the formation of its agreement with Shephard, there is personal jurisdiction over Shephard pursuant to § 302(a)(1).

### 2. Arimathaea

Milgrim claims that at the same New York meeting with Lacey on February 13, 1989 in which Mantle agreed to represent Shephard, Mantle also agreed to represent Arimathaea. Mantle Aff. ¶ 4. For the reasons discussed with regard to Shephard,

*supra*, this Court has jurisdiction over Arimathaea.

### 3. Nycal

■ Milgrim claims that it first began work related to Nycal in January 1990 when Lacey telephoned Mantle at Milgrim's New York office and asked for Milgrim's tax advice regarding a pending personal acquisition of Nycal by Lacey. Mantle Aff. ¶ 8. On February 23, 1990, Lacey met with Milgrim attorneys at Milgrim's New York office, and this tax advice was communicated. Mantle Aff. ¶ 9. On April 5, 1990, another meeting was held at Milgrim's New York office and attended by Mantle and Lacey, who by then was Nycal's Chief Executive Officer. At this second meeting, Lacey and Mantle negotiated the terms upon which Milgrim would serve as Nycal's general counsel and discussed the method of billing Milgrim's fees. Mantle Aff. ¶ 10. After this meeting, Mantle sent a letter dated April 19, 1990 to Lacey confirming the agreement to represent Nycal. Mantle Aff. ¶ 12, Exh. 2.

Accordingly, this Court has jurisdiction over Nycal.

### 4. Lacey

For the reasons set forth in section II of this opinion, this Court finds it unnecessary to resolve the question of whether there is personal jurisdiction over Lacey.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The defendants move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Milgrim's fraud claim for failure to state a claim upon which relief may be granted. This Court has excluded all matters outside the pleadings and so does not convert this motion to one for summary judgement. *Kopec v.*

---

**2.** The defendants offer a vastly different version of the events surrounding the formation of the Shephard–Milgrim relationship. They claim that the agreement for Milgrim to represent Shephard was reached during a telephone conversation between Shephard representatives located in Washington, D.C. and Mantle who was in New York. Affidavit of Graham F. Lacey, sworn to on May 31, 1991, at ¶ 32.

*Coughlin,* 922 F.2d 152, 154–155 (2d Cir. 1991).

■ Federal Rule of Civil Procedure 9(b) requires that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.Pro. 9(b). It is a generally accepted principle that allegations of fraud may not be based on information and belief,[3] and these allegations generally must specify the time, place, speaker, and content of the alleged misrepresentations. *Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

■ Turning now to Milgrim's complaint, this Court notes that Milgrim's allegation of fraud is based "Upon information and belief." Complaint, ¶ 16. Milgrim does identify the content and source of the fraudulent statement as Lacey's promise to cause the defendants to pay Milgrim's fees and alleges that Lacey knew he did not intend to do so. Milgrim fails to identify the time or place of the alleged fraudulent statement. Furthermore, Milgrim fails to state a factual basis for its claim that Lacey knew his promise of payment was fraudulent as is required by Rule 9(b). *Luce v. Edelstein, supra* note 3 at 54. If a pleading such a Milgrim's is sufficient to comply with Rule 9(b), all breach of contract claims would include such an allegation in order to assert a claim of fraud against an individual defendant. Milgrim's failure to include such factual support is fatal, and the defendants' motion to dismiss the fraud claims for failure to state a claim is granted.

### III. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

■ Defendant Shephard has moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss all claims against it for lack of subject matter jurisdiction, arguing that the amount in controversy does not exceed $50,000. 28 U.S.C. § 1332 (1991).

Milgrim's complaint alleges that, "Defendant Shephard owes plaintiff $48,422.18 for legal services rendered to, and disbursements and charges incurred for Shephard from February 1989 through November 1990." Complaint, ¶ 10. In addition, Milgrim alleges that Shephard owes it the costs of defending and indemnification for the suits filed by the McBride firm. Complaint, ¶ 11–12. The defendants argue that Milgrim's liability in the McBride suit is a mere "contingency" which is "too speculative to be considered in the amount in controversy for purposes of 28 U.S.C. § 1332." Def.Rep.Mem. at 9. Therefore, defendants urge that only $48,422.18 is in controversy, and there is no diversity jurisdiction with regard to Shephard.

■ It is well established that the amount in controversy for purposes of diversity jurisdiction should be determined from the face of the complaint itself, unless it appears or can be shown that the amount stated in the complaint is not claimed in good faith. *Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). In order to show that the amount claimed by the plaintiff was not made in good faith, it must appear to a "legal certainty" that the claim is really for less than the jurisdictional amount in controversy. *Id.* As the Second Circuit has summarized:

> The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits. Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted. (citations omitted) Rather, it must appear to a legal certainty that the plaintiff can not recover sufficient damages to invoke federal

---

**3.** While there is a recognized exception to this rule of particularity for facts which are peculiarly within the opposing party's knowledge, *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986), this exception is not applicable here. There is nothing to indicate that the facts surrounding Lacey's alleged fraudulent promise are peculiarly within his knowledge.

jurisdiction. *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982).

Milgrim has alleged that Shephard owes it $48,422.18 plus the costs of defending and indemnification for the McBride suit for $36,084.36. The difference between $50,000 and Milgrim's definitive allegation of $48,422.18 is $1,577.82. Therefore, under the teaching of *Zacharia, supra,* to defeat jurisdiction, it must appear to a legal certainty that Milgrim's costs of defending the McBride suit and its possible ultimate liability for damages, both of which arise from actions taken on behalf of Shephard, could not exceed $1,577.82. This strict standard has not been met here,[4] and defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## IV. MOTION TO TRANSFER THIS ACTION

■■■■ Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District for the District of Columbia. Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a District Court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C.A. § 1404(a) (1991).

In a motion pursuant to this section, the court should weigh several factors, including: the convenience of the parties, the convenience of the witnesses, the ease of access to sources of proof, the availability of process to compel the attendance of witnesses, the costs of obtaining willing witnesses, the practical problems relating to a prompt trial, and the interests of justice. *Congress Financial Corporation v. John Morrell and Co.,* 761 F.Supp. 16, 17 (S.D.N.Y.1991). Balancing of these factors is left to the sound discretion of the District Court, *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989), and the moving party must make a clear showing

to justify the change of venue. *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied, Pro Arts, Inc. v. Factors, Etc., Inc.,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Deference is given to the plaintiff's choice of forum, *Congress Financial Corporation, supra,* at 18, because the purpose of § 1404(a) is not to shift the inconvenience from one party to the other. *Companhia Siderurgica Nacional v. D.B. Orban Co., Inc.,* No. 90 Civ. 5661, 1991 WL 89645 at *3, 1991 U.S. Dist LEXIS 6848 at *7 (S.D.N.Y. May 23, 1991).

Here, neither the convenience of the parties nor the convenience of the witnesses argues for transfer of this case to the District of Columbia. While the defendants' representatives with the most knowledge of the underlying dispute do reside in the District of Columbia, Def.Mem. at 22, the most substantial issues in this case are likely to be the nature and value of the legal services rendered by Milgrim's New York attorneys to each of the several defendants. The plaintiff's key witnesses are all Milgrim attorneys who live in or near New York (6 witnesses). The defendants' key witnesses live in the District of Columbia (2 witnesses), British Columbia (2 witnesses), and Florida (1 witness). For the Canadian and Florida witnesses, travel to Washington is no more convenient than travel to New York. Therefore, this Court is not persuaded that transfer to the District of Columbia would be more convenient for the witnesses in this action or that the inconvenience for defendants of a New York forum outweighs the inconvenience for plaintiff of a District of Columbia forum.

Defendants' argue that the interest of justice will be served by transfer because the docket of this Court is more congested than that of the District Court for the District of Columbia. Def.Mem. at 23–24. Although this factor is to be accorded some weight in determining a motion pursuant to § 1404(a), it is certainly not decisive. *Fos-*

---

**4.** Contrary to the defendants' assertion, the McBride claim against Milgrim is not so speculative as to not warrant inclusion in the amount in controversy. Had McBride's claim against

Milgrim been merely threatened rather than already filed, defendants' argument would be more persuasive.

*ter v. Litton Industries, Inc.*, 431 F.Supp. 86, 88 (S.D.N.Y.1977). This Court is not persuaded that there is less congestion on the calendar of the District Court for the District of Columbia. For over a year, this part has offered immediate trial upon completion of discovery in all cases. Accordingly, defendants' motion to transfer this case is denied.

### CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is denied. Defendants' motion to dismiss the fraud claim is granted. Defendant Shephard's motion to dismiss for lack of subject matter jurisdiction is denied. Defendants' motion to transfer this case to the District for the District of Columbia is denied.

All counsel are to attend a pretrial conference on Wednesday October 16, 1991, at 9:00 am in courtroom 302. Discovery must be completed by November 25, 1991, and a pre-trial order by December 10, 1991. Trial conference is set for December 16, 1991 at 9:00 am.

IT IS SO ORDERED.