**RIVER ROAD INTERNATIONAL, L.P., M. Kingdon Offshore N.V. and Kingdon Partners, Plaintiffs,**

v.

**JOSEPHTHAL LYON & ROSS INCORPORATED, Alan L. Jacobs, Mitchell A. Hammer, Michael Mandelblatt, Solomon Corporation, Basics–Manufacturing Group, Inc., Hammer, Mandelblatt and Company, Richard N. Bernstein, Carl Solomon, Edward Solomon, Michael Krimsky and Irwin Hochberg, Defendants.**

No. 93 Civ. 3612 (MP).

United States District Court, S.D. New York.

Jan. 3, 1995.

Sonnenschein Nath & Rosenthal by Reid L. Ashinoff, Gregory S. Karawan, New York City, for plaintiffs River Road Intern., L.P., M. Kingdon Offshore N.V., and Kingdon Partners.

Battle Fowler LLP by Michael J. Malone, Paul A. Straus, New York City, for defendants Josephthal Lyon & Ross, Inc. and Alan L. Jacobs.

## OPINION

MILTON POLLACK, Senior District Judge.

Defendants Josephthal Lyon & Ross Incorporated ("Josephthal") and Alan J. Jacobs ("Jacobs") have moved this Court for an order transferring this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Defendants Hammer, Mandelblatt, Solomon Corporation, Basics Manufacturing Group, Inc., and Hammer, Mandelblatt and Company have filed an affidavit supporting the motion. For the reasons discussed below, the motion to transfer will be granted.

### Background

This action arose out of a June 1992 private offering of 10% Automatically Convertible Subordinated notes by Sheffield Industries, Inc. ("Sheffield"), a Florida corporation that had been engaged in clothing manufacturing and marketing. Plaintiff River Road International, a Delaware limited partnership with offices in Connecticut, purchased $2.1 million of the notes. Defendants Josephthal, a New York investment bank, and Jacobs, an Associate Director at Josephthal's Boca Raton, Florida office, participated in the preparation of a Term Sheet by which the offering was promoted. Plaintiff Kingdon Partners, a New York limited partnership with offices in Manhattan, purchased $600,000 of the notes. Plaintiff M. Kingdon Offshore, a Netherlands Antilles corporation with a New York investment manager, purchased $400,000 of the notes. Sheffield then filed for bankruptcy under Chapter 11 of the Bankruptcy Code on January 20, 1993 in the Southern District of Florida; the Sheffield bankruptcy was subsequently converted to a proceeding under Chapter 7, and Sheffield remains in bankruptcy proceedings today. On April 15, 1993, the bankruptcy court appointed William A. Brandt, Jr., a Florida resident, as Examiner to investigate the pre-petition activities of Sheffield; the Unsecured Creditors Committee also retained the Miami office of the accounting firm Price Waterhouse to investigate Sheffield.

On May 28, 1993, the plaintiffs filed this action ("*River Road*") in the Southern District of New York, by which they seek to recover damages and to rescind their purchase of the notes. The reports that resulted from the Examiner's and Price Waterhouse's investigations supplied much of the information on which the plaintiffs based the allegations in the instant action. The complaint alleged that the Term Sheet, as well as a January 1992 Prospectus prepared for one of Sheffield's stock offerings failed to disclose or misrepresented material facts about Sheffield's financial situation and about the intended uses of the offering proceeds. The plaintiffs brought *River Road* pursuant to §§ 10(b) and 20 of the Exchange Act and Rule 10b-5 promulgated thereunder, §§ 12(2) and 15 of the Securities Act, and the common law. Other than Josephthal, the corporate defendants named in *River Road* are all Florida corporations with offices in Florida, and all of the individual defendants apparently reside in Florida.

In June of 1993, purchasers of Sheffield stock and notes—not including the *River Road* plaintiffs—commenced three actions in the Southern District of Florida ("the Florida Actions"). The Florida Actions were subsequently consolidated into a class action entitled *Ganz Capital Management, Inc. et al. v. Mitchell A. Hammer, et al.*, 93–1068–Civ. ("*Ganz*"). *Ganz* seeks damages on behalf of two proposed classes—the Stock Class and the Note Class—pursuant to §§ 11 and 12(2) of the Securities Act,[1] § 10(b) and Rule 10b-5 of the Exchange Act, and the common law duty of care. The Note class consists of all persons who purchased Convertible Subordinated Sheffield Notes in the June 1992 Note Offering. The complaint names as defendants Hammer, Mandelblatt, Hammer, Mandelblatt & Co., Josephthal, Bernstein, Carl Solomon, Edward Solomon, Hochberg, Krimsky, and two parties not named as defendants in *River Road:* Reich & Co., Inc., an Alabama corporation headquartered in New Jersey that acted as underwriter that participated in Sheffield's January 1992 stock offer-

---

1. The complaint does not allege that Josephthal or Hochberg violated § 11 of the Securities Act.

ing; and Cohn, Berke, Bernstein, Brodie & Kondell, P.A., a Florida law firm that advised Sheffield in connection with the note offering. In its answer to the *Ganz* complaint, Josephthal named the Florida accounting firm Morrison, Brown, Argiz & Co., which audited allegedly fraudulent Sheffield financial statements, as a third-party defendant.

The progress of both actions has been complicated by the entry of a stay order by the Florida bankruptcy court on September 14, 1993. This stay order enjoins litigation against former officers and directors of Sheffield to preserve these Sheffield's directors' and officers' liability insurance policy for satisfaction of claims against these officers and directors that Sheffield has asserted in Florida state court. The stay order specifically states that it does not bar litigation against Josephthal or Jacobs. The stay order remains in effect. Notwithstanding the stay order, discovery and a court-ordered settlement conference in which the plaintiffs participated has occurred in *Ganz,* and the Southern District of Florida has ordered the parties to submit a scheduling order under which discovery will be complete during the summer of 1995.

### Discussion

Section 1404(a) provides that

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The plaintiffs do not dispute that *River Road* could have been brought in the Southern District of Florida pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and that therefore transfer is possible. Instead, the dispute centers on whether transfer would be convenient or in the interests of justice.

■ "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2nd Cir. 1989). Factors that the Court should consider include:

(1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Berg v. First American Bankshares, Inc.,* 576 F.Supp. 1239, 1241 (S.D.N.Y.1983) (Pollack, J.) (quoting *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967)). The movants bear the burden of establishing that transfer is warranted. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir.1978) ("the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum."), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

■ The defendants contend that transfer would advance the administration of justice by avoiding duplicative litigation in two fora. The defendants maintain that substantially the same issues of law and fact are being litigated in the Southern District of Florida in the *Ganz* action between a proposed plaintiffs' class that includes the New York plaintiffs and nine of the twelve New York defendants. Moreover, the movants contend that this Court could not obtain jurisdiction over two defendants, the Florida law firm Cohen, Bernstein and the Florida accounting firm Morrison, Brown, against which Josephthal has asserted claims in *Ganz,* so that Josephthal must proceed in the *Ganz* action regardless of the disposition of *River Road.* The movants also argue that transfer of the New York action to Florida would further the convenience of the parties by permitting the issues common to *Ganz* and the New York action to be litigated once rather than twice, ensuring that nonparty witnesses, most of whom Josephthal maintains are Florida residents, will be within the subpoena power of the court in which these issues will be tried, and facilitating production and review of voluminous documents from Sheffield's files

currently housed in Florida and likely to be necessary for the litigation.

The New York plaintiffs resist transfer by attempting to characterize *River Road*, despite the defendants presently named and the legal theories presently asserted in the pleadings, as essentially involving New York parties, New York documents and witnesses, and events occurring in New York. The crux of their argument is that they have concluded a "settlement in principle" that releases all defendants in *River Road* other than Josephthal and Jacobs. Should such a settlement be executed, the plaintiffs predict that the principal issue that will remain in *River Road* will be whether Josephthal can make out a due diligence defense against § 12(2) liability, an issue that the plaintiffs believe will not require use of documents or witnesses in Florida. In any event, the plaintiffs predict that substantial discovery of documents and witnesses in Florida will be unnecessary, because the Examiner's report and a deposition of the Examiner will suffice to establish the misrepresentations underlying *River Road*, because the parties to *River Road* will stipulate to the existence of misrepresentations in Sheffield's offering materials, or because the settlement, if it is ever executed, will require its signatories to make themselves available for testimony in New York. Furthermore, plaintiffs have reached an agreement with the *Ganz* plaintiffs to coordinate discovery in the two actions in order to reduce duplicative discovery in the two actions. Plaintiffs therefore argue that transfer to Florida is unnecessary and would prejudice them by miring the plaintiffs in class litigation, whereas the plaintiffs believe that they could obtain a trial sooner in New York, especially if the supposed settlement-in-principle matures into an actual settlement that would "streamline" *River Road*.

The plaintiffs' characterization of *River Road* as mostly involving New York parties and requiring proof available in New York does not describe the action as it currently stands but rather describes the action as the plaintiffs hope it might evolve in the future. No settlement has yet been presented to this Court despite plaintiffs' assurances in their brief that a settlement-in-principle had been achieved as of December 7, 1994, nor have the plaintiffs included a draft settlement agreement in their motion papers.[2] Moreover, the plaintiffs' predictions that the need for proof about the existence of misrepresentations in Sheffield's offering materials rests on the speculative possibility that the defendants will concede this issue or content themselves with the Examiner's report and testimony, but the defendants have not indicated that they intend to so limit the issues or sources of proof. To the contrary, Josephthal and Jacob's answer to the *River Road* complaint asserts as an affirmative defense that "[a]ll facts material to the offering of the Notes were appropriately disclosed in the April 1992 Term Sheet...." Josephthal and Jacob's Amended Answer at ¶ 138. Plaintiffs' predictions about the future character of *River Road* are therefore entitled to little weight.

On the facts as they now stand, transfer is warranted to allow a single court to manage both *Ganz* and *River Road*. By concluding an agreement to coordinate discovery with the *Ganz* plaintiffs expressly "to avoid duplication for plaintiffs, defendants, and third party subpoenaed witnesses," Ashinoff Affidavit, Ex. A at 2, the plaintiffs have confirmed what is apparent from the complaints in the two actions: *River Road* and *Ganz* involve common parties litigating common

2. Indeed, from the affidavits submitted in support of the plaintiffs' opposition to the motion, it is not at all apparent that defendants Solomon Corp., BMG, or Hammer, Mandelblatt and Co. are parties to the settlement. The December 7 affidavit submitted by Michael J. Pucillo, coordinating class counsel in the *Ganz* action, averred that "the plaintiffs in both the *Ganz* and *River Road* actions have essentially reached a full settlement, subject to signature and Court approval, with all of the former Sheffield officer and director defendants." Pucillo Affidavit at ¶ 6. The plaintiffs' contention that the settlement-in-principle includes the corporate defendants other than Josephthal is based on a December 7 letter from plaintiffs' counsel to counsel participating in the settlement negotiations, in which the plaintiffs asked that the corporate defendants be included in the final draft agreement. Ashinoff Affidavit, Ex. C at 1. This letter does not indicate for what consideration, if any, these releases will be granted. The plaintiffs' affidavits do not contain any evidence that the requested addition has become part of the settlement-in-principle.

issues of law and fact. This district has held that:

> The presence of related litigation in the transferee forum weighs heavily in favor of transfer, since litigation of related claims in the same tribunal results in "more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest."

*National Union Fire Insurance Company of Pittsburgh, PA v. Turtur*, 743 F.Supp. 260, 263 (S.D.N.Y.1990) (quoting *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y. 1988)); *see also Berg*, 576 F.Supp. at 1243 ("Pendency of such a related action in the transferee forum weighs heavily in favor of transfer") (Pollack, J.). While the discovery coordination agreement between the *River Road* and *Ganz* plaintiffs recognizes the problem posed by litigating two related actions in different fora, it does not eliminate the potential for duplicative trial testimony or the inconsistent resolution of discovery disputes.

The plaintiffs also represent that they intend to opt out of *Ganz* if the Note Class is certified and pursue their claims exclusively in *River Road.* Even if the plaintiffs were to opt out of *Ganz*, transfer would still be justified. Even if consolidation of the actions were to become impossible because of the *River Road* plaintiffs' election to opt out of *Ganz*, "having the actions litigated in the same geographical area would still facilitate the coordination of pre-trial discovery, and save the time and energies of the witnesses, the parties, and the attorneys." *National Union Fire Insurance Co. v. Turtur*, 743 F.Supp. 260, 264 n. 3 (S.D.N.Y.1990) (transferring New York action related to action in Texas federal court despite possibility that the Texas action would be remanded to state court).

Transfer would also serve the convenience of the parties and witnesses. By assuming that the supposed settlement-in-principle will eventuate in an actual settlement releasing all defendants except for Josephthal and Ja-cobs, the plaintiffs have avoided addressing the substantial Florida contacts present in the case as it stands today. Most of the *River Road* defendants are Florida residents; as indicated at the beginning of this opinion, several of these Florida defendants have indicated a preference for litigating their defenses in the Southern District of Florida. Only one of the plaintiffs and one of the defendants are New York residents. Moreover, those who appear to be the key non-party witnesses are located in Florida. The *River Road* complaint makes frequent reference to the reports prepared by the Examiner, a Florida resident, and the Miami office of Price Waterhouse. The *River Road* plaintiffs essentially concede, through their submission of an affidavit from class counsel in *Ganz*, that testimony from those who prepared these reports will be crucial in proving the occurrence of the misrepresentations alleged as the basis for the claims in *River Road.* Pucillo Affidavit at ¶ 10 ("I believe that the Examiner's Report and testimony from those who prepared these reports will largely dispose of [the issue whether there were misrepresentations]."). Thus, the convenience of the majority of parties and key witnesses favors transfer to the Southern District of Florida.

Finally, the plaintiffs argue that, because *River Road* was filed before the cases consolidated into *Ganz* were filed, *River Road* should not be transferred. The plaintiffs claim the benefits of the "first-filed" rule to defeat the motion to transfer. *See Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 166 (S.D.N.Y.1992) (noting that in considering transfer motions, " '[t]he well-settled principle rule in this Circuit [is] that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or special circumstances giving priority to the second,' ") (quoting *First National Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2nd Cir.1989)). However, the first-filed rule does not supersede the inquiry into the balance of convenience required under § 1404(a):

> the Court's focus in deciding whether to transfer this action remains overall conve-

nience and efficiency in the administration of justice. Thus, despite the 'first-filed' rule, the Court would not hesitate to order transfer if defendants were otherwise able to meet their burden.

*Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1061 (S.D.N.Y.1987) (Leisure, J.). Thus, the fact that *River Road* was filed before the Florida Actions does not override the inconvenience and inefficiency of allowing *River Road* to proceed in this district.

### Conclusion

The movants have sustained their burden of demonstrating that the balance of conveniences warrant transfer of *River Road*. Accordingly, the motion is granted, and the Clerk is directed to remit the papers in this action to the United States District Court for the Southern District of Florida.

So ordered.